UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY SNELL,
        Plaintiff,                      CASE NO.:2:06-CV-14769

vs.                                               HON. ARTHUR J. TARNOW

Michael J. Astrue                        MAG. JUDGE STEVEN D. PEPE
COMMISSIONER OF SOCIAL SECURITY,
        Defendant.
_____/

## Report and Recommendation

**1.    BACKGROUND**

Tammy Snell brought this action under 42 U.S.C. §405(g) and §1383(c)(3) to challenge a final decision of the Commissioner finding that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that the Commissioner's motion for summary judgement be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED.**

**A.    Procedural History**

Plaintiff applied for DIB and SSI on September 6, 2002, (R. 49-51), alleging that she became disabled on January 3, 2002. This application was denied on November 27, 2002 (R. 39). Plaintiff requested a hearing and the request for hearing was dismissed for untimely filing in a Notice of Dismissal by Administrative Law Judge (ALJ) Jones on April 28, 2003 (R. 44-45). Plaintiff appealed to the Appeals Council, which issued a September 4, 2004, order vacating the ALJ's order of dismissal and remanding the case for further proceedings (R. 189-190). A hearing was held on February 8, 2007, and ALJ John Ransom determined that Plaintiff was not under a "disability" as

defined in the Social Security Act (R. 21-27). The Appeals Council denied Plaintiff's request for Review (R. 6-8).

**B.      Background Facts**

      **1.      *Plaintiff's Hearing Testimony and Statements***

Plaintiff was 45 years old at the time of the hearing before ALJ Ransom (R. 215). Plaintiff graduated from high school, is married and has one 14 year old child living with her at home (R.216). Plaintiff's prior work experience was as a housekeeper and janitor (R. 22).

Plaintiff stopped working on January 3, 2002, after she slipped and fell on some ice at work (R. 216). As a result of the fall, Plaintiff claims to be unable to "bend, twist," pick up anything, stand or walk for more than 15 or 20 minutes. Plaintiff is also unable sit for periods of time for longer than 15 minutes (R. 219).

She has constant pain in her lower, right back (R. 216). Plaintiff also has neck pain, since 2004 due to a pinched nerve which has worsened over time (R. 217, 223). The back pain is constant, but Plaintiff noted that the neck pain "comes and goes" (R. 222).

Plaintiff does not do any house or yard work (R. 217). Plaintiff takes pain medication, but notes that it causes drowsiness (R. 219). As a result, Plaintiff claims to take three, one hour naps per day but is unable to sleep at night. Plaintiff, for the past year, has taken medicine for depression in order to relax (R. 221).

Plaintiff uses carpal tunnel braces (R. 226-27). Plaintiff claims to be unable to open up her right hand, and has less trouble with her left hand. Plaintiff can lift a gallon of milk, but when doing so she feels pain in her back and arms (R. 220). Plaintiff is able to bathe and groom herself (R. 225). Plaintiff drives her daughter to school each day, but has taken no long trips because of the pain that arises on such trips (R. 221).

### 2. *Medical Evidence*

On January 2, 2002, Plaintiff went to the emergency room after falling in a parking lot at her place of employment (R. 88). Plaintiff complained of pain in her neck and back and upon examination had mild paraspinous cervical muscle tenderness to palpation bilaterally, but a full and nontender range of neck motion (R. 88). Plaintiff also had paraspinous lumbosacral muscle tenderness, but no neurological abnormalities (R. 88). X-Rays of the spine revealed only some mild degenerative changes (R. 91-93). The examining doctor's impression was acute cervical, thoracic and lumbosacral strain (R. 90). Plaintiff was discharged with medications and a cervical collar (R. 89).

Kevin Callaway, M.D., initially treated the Plaintiff and prescribed physical therapy and medication on Plaintiff's first visit (R. 116).

On January 7, 2002, Plaintiff began physical therapy for low back and neck pain (R. 94, 100). On February 14, 2002, Plaintiff was discharged from therapy for her neck as the symptoms had resolved (R. 98). On March 1, 2002, Plaintiff was discharged from physical therapy for her back due to discrepancies with her worker's compensation (R. 94).

On February 15, 2002, an MRI of Plaintiff's spine showed no significant focal post-traumatic lumbosacral herniated nucleus pulposus or spinal stenosis (R. 114).

On May 30, 2002, Gavin Awerbuch, M. D., conducted a neurological consultation of Plaintiff and found that Plaintiff had reduced lumbar motion, point tenderness over the right sacroiliac joint and a positive Patrick's test (R. 128). Plaintiff walked with a limp, could not perform tandem walking and could not squat or kneel without experiencing pain. A neurological examination was unremarkable except for weakness of Plaintiff's right extensor hallucis longus muscle. Plaintiff's February 15, 2002, MRI revealed degenerative changes and a bulged disc at the

right L4-L5 level with effacement of the right lateral recess and a small right disc protrusion at L5-S1. Dr. Awerbuch's impression was post-traumatic back pain with lumbar disc disease, sacroiliac dysfunction, and ruled out radiculopathy for radiation of pain into her hip and leg (R. 128-29). He prescribed physical therapy and medications; he also ordered further testing.

From June 6, 2002, to July 30, 2002, Plaintiff began another 15 sessions of physical therapy (R. 106).

On July 31, 2002, Dr. Awerbuch examined Plaintiff and observed tenderness over the iliolumbar areas and in the right sacroiliac joint, as well as a reduced range of motion (R. 122). Plaintiff had a positive Patrick's test and straight leg raise test on the right leg. Dr. Awerbuch continued with conservative treatment.

On October 31, 2002, Dr. Awerbuch examined the Plaintiff and noticed her reduced lumbar motion with palpable spasms (R. 120). Plaintiff had trouble performing tandem walking and experienced pain with squatting. Dr. Awerbuch suggested an isometric exercise program, aerobic conditioning and a back brace. Plaintiff's medications were adjusted as she stated that current levels were not very helpful.

The record indicates that Plaintiff did not receive any treatment from October 2002 until June 30, 2004, when she returned to see Dr. Awerbuch (R. 139). On examination, Plaintiff had a reduced range of lumbar motion with spasms and pain with palpation of the facet joints. Straight leg raising was positive bilaterally. Plaintiff had weakness of the right dorsi plantar flexion and diminished pinprick over the dorsum of her foot. She experienced difficulty with heel to toe walking. Dr. Awerbuch, believed that this was post-traumatic back pain with lumbar disc protrusion, L5-S1 radiculopathy, and muscle spasm. While suggesting the possibility of epidural steroid injections, he continued with conservative care and suggested that Plaintiff learn home

exercises and follow proper limitations and biomechanics in her daily activities. An electromyogram of Plaintiff's lower extremities performed on that date showed right L5-S1 radiculopathy (R. 141).

When Plaintiff saw Dr. Awerbuch on November 11, 2004, the doctor's impression was post-traumatic back pain, disc protrusion, L5-S1 radiculopathy, bilateral sacroiliac joint dysfunction, bilateral carpal tunnel syndrome, right wrist tendinitis, and rule out myoclonic epilepsy, nocturnal myoclonus, or spinal myoclonus due to consistent symptoms (R. 155). Dr. Awerbuch administered bilateral sacroiliac joint injections (R. 155). An EMG of Plaintiff's upper extremities showed bilateral carpal tunnel syndrome (R. 157). Dr. Awerbuch recommended carpal tunnel braces and B-complex vitamins (R. 157).

An MRI scan of Plaintiff's cervical spine dated November 22, 2004, showed a small central disc protrusion at C3-C4 with some mild effacement of the anterior thecal sac but no central canal stenosis, a mild broad-based disc bulge at C4-C5 with a central annular fissure but no canal stenosis, and some mild neural foraminal narrowing at the lower cervical levels (R. 142).

On January 3, 2005, Plaintiff underwent excision of dorsal wrist ganglion of her right wrist due to recurrent complaints of symptomatic pain associated with performance of daily activities (R. 158). This surgery was performed due to Plaintiff's complaints of pain during the course of the work day (R. 160).

On March 11, 2005, Dr. Awerbuch administered diagnostic and therapeutic bilateral L4-L5 and L5-S1 facet injections and right sacroiliac joint injections (R. 143). He recommended physical therapy and encouraged Plaintiff to wear her wrist braces (R. 143).

  B. *<u>Vocational Evidence</u>*

ALJ Ransom posed a hypothetical question to VE Shaner. The ALJ asked whether someone with the Plaintiff's age, education, limitations and impairments could perform Plaintiff's prior work (R. 225-26). VE Shaner answered that such a person would not be able to perform Plaintiff's prior work given her "stated need to nap three times daily and for up to one hour each" (R. 226).

ALJ Ransom posed a second hypothetical to VE Shaner asking VE Shaner to assume that Plaintiff could perform light work with the following restrictions: (1) sit/stand option; (2) no repetitive bending; (3) no twisting; (4) no turning; (5) no gripping or grasping; (6) no air/vibrating tools; (7) no foot controls; and (8) no overhead work (R. 227).

VE Shaner felt that there would be numerous sedentary jobs available including 1,800 inspector jobs, 1,600 surveillance system monitors, 6,500 reception clerks and 5,600 order clerks in the Lower Peninsula of Michigan (R. 227).

VE Shaner noted that Plaintiff would be only allowed one absence per month and would be required to be on task at least 75 percent of the time (R. 228).

C.     **ALJ Ransom's Decision**

ALJ Ransom found that claimant met the nondisability requirements set forth in Section § 216(I) of the Social Security Act on the alleged date of January 3, 2002, and was insured for benefits through September 30, 2005 (R. 22). He found that Plaintiff has severe impairments as defined by the Social Security Act and regulations in the form of degenerative disc disease of the lumbar and cervical spin, disc protrusions in the cervical and lumbar spine, vertigo, headaches and bilateral carpal tunnel syndrome.

ALJ Ransom noted that Plaintiff takes numerous medications including: Vicodin, Diovan, Acetaminophen, Nexium, Propoxy Estariol, Lesapro, Klonopin and Soma (R. 23). While taking anti-depressants, ALJ Ransom noted that Plaintiff has not been under the care of any mental health

professional and there is no definitive diagnosis of depression or other psychological impairment (R. 24). Further, ALJ Ransom found that the record supports the finding that Plaintiff has mild or no limitations in daily activities or "ability to maintain social functioning and her abilities of concentration" and as such her depression is not a severe impairment within the meaning of the Social Security Act.

With regard to Plaintiff's claims of pain and pain medication, ALJ Ransom concluded that "the intensity, persistence and functionally limiting effects of the symptoms alleged by the claimant are not fully consistent with the objective medical and other evidence of record." ALJ Ransom noted that Plaintiff, on March 7, 2002, reported that her pain was "5" on a scale of 1 to 10 (R. 25). Plaintiff claimed that her pain worsened from 2002 to 2005, but the ALJ observed that reports of her daily activities were more restricted in 2002 than they were in 2005.

The ALJ reported Plaintiff's practice of taking takes three one hour naps a day but has reported good results to her therapy for sleep apnea (R. 23-24). He found it to be not severe. He also found her blood pressure under control and not a severe impairment (R. 24). ALJ Ransom point out no evidence of treatment for her back with Dr. Awerbuch from October 2002 until June 2004 when she received steroid injection then again the following March (R. 24-5).

However, Plaintiff's impairments do not meet or medically equal any impairment listed in Appendix 1, Subpart P of Regulation No. 4. Plaintiff's allegations of disabling pain and limitations are not consistent with the objective clinical evidence of the record (R. 27).

Plaintiff may not perform her prior work, but possesses a residual functional capacity to perform a significant range of sedentary work (R. 27). Further, if Plaintiff retained the residual functional capacity for a full range of sedentary work, the regulations would direct a finding of not disabled (R. 27).

Finally, ALJ Ransom concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (R. 27).

II.   **ANALYSIS**

   A.   **Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[1] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

---

[1] *See, e.g.*, *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinburger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B. Factual Analysis

In her Motion for Summary Judgment, Plaintiff argues that her case should be reversed for an award of benefits because ALJ Ransom's hypothetical question to the Vocational Expert failed to accurately described the Plaintiff and he wrongly concluded that she retained the ability to engage in "substantial, gainful activity" (Dkt. # 11, p. 9, 13). Alternatively, Plaintiff argues that this case should be remanded for further consideration by the ALJ (Dkt. 11, p. 16).

Plaintiff alleges that she is disabled due to pain (Dkt. # 10, p. 13). Plaintiff argues that the ALJ erred in failing to explain his credibility finding and instead gave only conclusory statements that her allegations of pain and limitations were not consistent with the objective medical and other evidence of record (Dkt. # 10, p. 14). Plaintiff also claims that the ALJ erred as a matter of law by failing to properly analyze her medication side effects and her need to nap three times a day (Dkt. # 10, p. 13).

Plaintiff claims that the ALJ improperly assessed her credibility and allegations of pain. Subjective evidence is only considered to "the extent...[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. 404.1529(a))" *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 852 (1986). While the issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion when making a determination of disability, (*Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), there are limits on the extent to which an ALJ can rely on "lack of objective evidence" in discounting a claimant's testimony.

Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain

such pain. *See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan,* 801 F.2d at 852. While the underlying condition must have an objective basis, neither the Social Security Act nor the regulations require a claimant to prove the degree of pain and limitations by objective medical evidence. Thus, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Section 404.1529(c)(2),11 29 C.F.R. § 404.1529(c)(2) states:

> We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

*See also Duncan,* 801 F.2d at 853; *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *Benson v. Heckler,* 780 F.2d 16, 17 (8th Cir. 1985); *Halpin v. Shalala,* 999 F.2d 342, 346 (8th Cir. 1993).

Yet, in determining the existence of substantial evidence, it is not the function of the federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In *Jones* the Court noted that an ALJ can reject a claimant's credibility on pain and other symptoms, and exclude these from the hypothetical question to the VE, if the ALJ's reasons are adequately explained. *Jones,* 336 F.3d at 476.

But as Plaintiff asserts, *Felinsky v. Bowen,* 35 F.3d 1027 (6th. Cir. 1994) requires the ALJ to explain credibility findings, and those reasons must include more than recitation of the medical history and a conclusion that the objective medical evidence does not support the claimant's complaints of pain. Thus, in the present case, this Court must evaluate the evidence cited by ALJ Ransom beyond his conclusions that the "the intensity, persistence and

functionality limiting effects of the symptoms alleged by the claimant are not fully consistent with the objective and other evidence of record" (R. 24). The focus on the 'other evidence of record' beyond objective medical evidence is critical in determining the legal sufficiency of an ALJ's decision.

In the present case, ALJ Ransom in considering Plaintiff's complaints could have been more thorough in explaining his reasons for discounting her credibility and statements. He noted the X-Rays following her fall showed only mile degenerative disc disease (R. 24). The ALJ noted that Plaintiff's treating neurologist, Dr. Awerbuch, treated her conservatively with medication, physical therapy, and injections (R. 24-25). He noted the improvement in deep tendon reflexes and motor strength with therapy. Significantly, the ALJ noted the gap in Plaintiff's medical treatment from October 2002 to June 2004 (R. 24). Regarding Plaintiff's claims of pain, ALJ Ransom noted that Plaintiff, on March 7, 2002, reported that her pain was "5" on a scale of 1 to 10 (R. 25). Plaintiff claimed that her pain worsened from 2002 to 2005, but the ALJ observed that reports of her daily activities were more restricted in 2002 than they were in 2005.

He also found that Plaintiff's allegations at the administrative hearing were inconsistent with her own report activities of daily living in 2002 and her capacity had actually increased somewhat from 2002 to 2005 (R. 25, 218). As the ALJ noted, Plaintiff reported to the Agency in September 2002 that she could only stand for 5 minutes, lift 5 pounds, and walk half a block (R. 82-83). Yet, at the May 2005 hearing, she testified that she could stand or walk for 15-20 minutes, sit for 15-30 minutes, and lift a gallon of milk (R. 23, 217, 220). Plaintiff at her hearing testified that her pain medication caused drowsiness and she had to lie down (R. 219). Yet, on two occasions on her September 25, 2002, Activities Questionnaire and on her Pain

Questionnaire she denied any side effects from her medication and on the latter she acknowledged it provided her some relief (R. 80, 82).

The ALJ noted that while the Plaintiff felt depressed and took antidepressants, she had never sought care from mental health professional (R. 24). He found her depression not a severe impairment within the meaning of the Social Security Act, which is supported by the record[2].

Regarding Plaintiff's daily three hour naps, the ALJ noted that Plaintiff's therapy for sleep apnea has produced "good results." Further, the record contains no objective findings to support Plaintiff's subjective claim that she requires three one hour naps each day nor was fatigue or sleeping mentioned in her disability report[3].

While ALJ Ransom should have been more specific on why he discounted her asserted daily naps which she did not raise in her September 2002 Daily Activities this limitation is not mentioned in any clinical notes in her medical record, and her sleep apnea problem was treated later with apparent success, and while the credibility findings could have been more detailed they are sufficient.

Substantial evidence supports the decision of ALJ Ransom that Plaintiff can perform "a restricted range of sedentary work" (R. 25). Furthermore, Plaintiff has failed to identify any harmful error in this decision.

### III.  RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

---

[2]Her September 2002 Disability Report made no claim of disability due to psychological limitations but only due to severe pain from back and neck pain and high blood pressure (R. 55).

[3]*See* footnote #2.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Note: any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


DATED: September 28, 2007              s/ Steven D. Pepe
                                       STEVEN D. PEPE
                                       United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2007 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification to the following: Janet Parker, AUSA, Mikel E.Lupisella, Esq., and I hereby certify that I have mailed by U.S. mail the paper to the following non-ECF participants:  Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606

                                              s/ James P. Peltier
                                              James P. Peltier
                                              Courtroom Deputy Clerk
                                              United States District Court
                                              600 Church St.
                                              Flint, MI 48502
                                              810-341-7850
                                              pete_peltier@mied.uscourts.gov